## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 25-22245-Civ-BECERRA/TORRES

BAPTIST HOSPITAL OF MIAMI, INC.,
SOUTH MIAMI HOSPITAL INC.,
WEST KENDALL BAPTIST HOSPITAL, INC.,
HOMESTEAD HOSPITAL, INC., and
DOCTORS HOSPITAL, INC.,

       *Plaintiffs*,

v.

PREFERRED CARE NETWORK, INC.,

       *Defendant.*

_____/

### *ORDER ON PLAINTIFFS' MOTION FOR REMAND*

       This matter is before the Court on Plaintiffs', Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., West Kendall Baptist Hospital, Inc., Homestead Hospital, Inc., and Doctors Hospital, Inc. (collectively "Baptist Health") Motion to Remand. [D.E. 28]. Defendant Preferred Care Network, Inc. ("Preferred Care") timely filed its response in opposition.[1] [D.E. 35-1]. Therefore, Plaintiffs' motion is now ripe for disposition. After careful consideration of the motion, relevant authority, and for the reasons discussed below, Plaintiffs' Motion is GRANTED.

---

[1] On June 16, 2025, the Honorable Jacqueline Becerra referred Baptist Health's motion to remand to the undersigned for disposition. [D.E. 30].

## I.      BACKGROUND

This case arises from an alleged breach of contract involving Plaintiffs, not-for-profit hospitals that each belong to the Baptist Health South Florida System, and a private insurance company, Preferred Care. [D.E. 17 at 2]. The parties entered into a Hospital Service Agreement (the "Agreement") effective January 1, 2005, which was subsequently amended numerous times. [D.E. 28 at 5]. The most pertinent amendment became effective January 1, 2016. *Id*. Under the amended Agreement, Preferred Care agreed to pay Baptist Health for outpatient drugs it provided to Preferred Care's Medicare Advantage members at the agreed-upon reimbursement rates.

For context, Baptist Health and Preferred Care operate within the Medicare Advantage program, which "is a public-private health insurance system that runs parallel to Medicare." *Health Care Auth. for Baptist Health v. UnitedHealthCare of Ala., Inc.,* No. 2:24-cv-774-ECM [WO], 2025 U.S. Dist. LEXIS 129095, *5 (M.D. Ala. July 8, 2025) (quoting *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.,* 974 F.3d 1305, 1308 (11th Cir. 2020)). This program permits Medicare beneficiaries to enroll in plans offered by Medicare Advantage Organizations (MAOs), private health insurance companies that provide coverage equal to or greater than traditional Medicare. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.,* 832 F.3d 1229, 1235 (11th Cir. 2016). The Centers for Medicare and Medicaid Services ("CMS") delegates its responsibilities to the MAOs and in turn pays them a fixed fee per enrollee. *Id*.

This arrangement enables MAOs to independently contract with healthcare providers, such as hospitals, to furnish services to their members. *See* 42 U.S.C § 1395w-22(d)(1). Importantly, CMS may not require MAOs to contract with a certain healthcare provider or adopt any particular pricing structure. *See* 42 U.S.C. § 1395w-24(a)(6)(B)(iii). As a result, MAOs have the discretion to contract with healthcare providers of their choosing and to negotiate the terms and reimbursement rates of those agreements. The present dispute centers on an alleged breach of such an agreement between Baptist Health and Preferred Care.

The provisions of the Agreement relevant to remand involve the incorporation of CMS's pricing structure under the federal 340B Drug Pricing Program (the "340B Program"). Baptist Health qualifies for and participates in the 340B Program because it provides care to underserved populations. [D.E. 28 at 2]. The 340B Program permits participating hospitals to purchase covered outpatient drugs from manufacturers at discounted prices. See 42 U.S.C §256b(a)(1).

Under traditional Medicare, CMS reimburses hospitals for outpatient items and services they provide, including certain outpatient prescription drugs. *American Hosp. Ass'n v. Becerra,* 596 U.S. 724, 726-27 (2022) ("AHA"). By statute, CMS has two methods for setting reimbursement rates for drugs. *Id*. at 728-29. First, CMS may conduct a survey of hospitals' acquisition costs for prescription drugs and set a reimbursement rate based on the average acquisition cost for each drug. *Id*. (citing § 1395l(t)(14)(A)(iii)(I)). This approach permits reimbursement rates to vary across different groups of hospitals. *Id*. Alternatively, if CMS does not conduct a survey, the

reimbursement rate is fixed by statute at 106% of the drug's average sale price (ASP), prohibiting CMS from varying reimbursement rates across different groups of hospitals. *Id.*

In 2018, despite never conducting a survey of hospitals' acquisition costs, CMS implemented two separate reimbursement rates: one for non-340B hospitals and one for 340B hospitals. *Id.* at 729-390. While the reimbursement rate remained at the mandated 106% of each drug's ASP, 340B hospitals were reimbursed only 77.5% of the ASP of each drug–a dramatic reduction. *Id.* at 731.

In 2022, the Supreme Court unanimously held in *AHA* that this reimbursement scheme was unlawful because CMS had failed to conduct the requisite survey of hospitals' acquisition costs prior to implementing differential rates. *Id.* at 739. The Court remanded the case to the district court to craft a solution. *Id.*

The district court subsequently vacated the prospective application of the reduced 340B reimbursement rate, reinstated the previous rate, and remanded the matter to CMS to develop a retrospective remedy. *AHA,* Civil Action No. 18-2084 (RC), 2023 U.S. Dist. LEXIS 3843, at *10-18, 2023 WL 143337, at *3-6 (D.D.C. Jan. 10, 2023). In response, CMS issued a final rule announcing that it would make a one-time lump-sum payment to the affected 340B hospitals participating in traditional Medicare to compensate them for the underpayments made between 2018 and 2022. *See* Medicare Program; Hospital Outpatient Prospective Payment System: Remedy

for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022, 88 Fed. Reg. 77,150 (Nov. 8, 2023).

After CMS issued its final rule, Baptist Health made a demand to Preferred Care for the amounts it alleged are due to it under the Agreement. Preferred Care refused to do so. [D.E. 17 at 10].  Baptist Health then filed this breach of contract action in state court, alleging that Preferred Care failed to fulfill its obligations under the Agreement. [D.E. 28 at 6]. Specifically, Baptist Health claims that Preferred Care breached the Agreement "by refusing to pay the Medicare Allowable percentage for outpatient prescription drugs" Baptist Health delivered to Preferred Care's Medicare Advantage members between January 1, 2018 and December 2, 2022, and by "refusing to update its payment methodology to be consistent with CMS's updated methodology for making a lump-sum payment to hospitals participating in the 340B Program." [D.E. 17 at 11]. In the alternative, it asserts state law claims for unjust enrichment and quantum meruit.  Baptist did not assert any federal causes of action together with these state law contractual claims. *Id.* at 12-13.

According to Baptist Health's Complaint, it seeks a lump-sum payment "for the difference between the illegally reduced rate of 77.5% of ASP that [Preferred Care] paid [Baptist Health] for 340B drugs from January 1, 2018, through December 2, 2022, and the lawful, statutorily mandated rate of 106% of ASP." *Id.* at 8. As a direct result of Preferred Care's alleged breach of the Agreement, Baptist Health claims to have incurred substantial monetary damages exceeding $16 million. *Id.* at 12. The remedy sought is contractual in nature because the alleged obligation arises

from the Agreement–specifically, Preferred Care's responsibility to pay the Medicare Allowable rate for outpatient drugs and update its reimbursement methodology to align with CMS's payment methods.

Plaintiffs seek the same relief for its alternative state-law implied contract and quasi-contractual claims. For the unjust enrichment claim, it seeks "the difference between the rates it paid [Baptist Health] for the services at issue and the rates it is obligated to by law to pay [Baptist Health] for those services[.]" For its quantum meruit claim it seeks "the fair value of their services," which corresponds to the rate established by the statute. *Id*. at 12-13.

Preferred Care then removed the pending action to federal court in this District, invoking federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the alternative state-law claims pursuant to 28 U.S.C. § 1367. Having set forth the relevant background, the Court now addresses whether removal was proper on Baptist's motion for remand.

## II.    APPLICABLE PRINCIPLES AND LAW

Federal courts are courts of limited jurisdiction, meaning they only have the power to provide a forum for some, not all, disputes. *See Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1260–61 (11th Cir. 2000). "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.,* 849 F.3d 1313, 1317 (11th

Cir. 2017) (citations and internal quotations omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Beavers v. A.O. Smith Elec. Prods. Co.,* 265 F. App'x 772, 777 (11th Cir. 2008) (citations omitted). Alternatively, the action can be remanded back to state court under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction after having been removed to federal court under section 1441.

"The plaintiff is the master of his complaint and is free to choose federal or state jurisdiction." *Morock v. Chautauqua Airlines, Inc.,* No. 8:07-CV-00210-T17MAP, 2007 U.S. Dist. LEXIS 43133, at *1, 2007 WL 1725232, at *1 (M.D. Fla. June 14, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)). However, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If a defendant decides to do so, the defendant bears the burden of putting forth sufficient facts supporting the existence of federal jurisdiction. *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998). A federal court must determine whether it has subject matter jurisdiction at the time a removal notice is filed. *See Poore v. American-Amicable Life Ins. Co.,*

218 F.3d 1287, 1290-1291 (11th Cir. 2000). And because removal implicates significant federalism concerns, courts must strictly construe removal statutes. *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand to state court.")

Here, both parties acknowledge that diversity jurisdiction is lacking and that no express statutory basis for federal jurisdiction exists under the face of the operative complaint. Nevertheless, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, Preferred Care can still invoke federal jurisdiction if Baptist Health's claims arise under federal law. *See Caterpillar,* 482 U.S. at 392. Ordinarily, a claim "arises under" federal law when a federal law creates the cause of action. *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996). However, where–as here–the complaint only raises a state law claim, federal jurisdiction may still lie under § 1331 if those claims implicate significant federal issues. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005).

Federal jurisdiction under this limited theory exists in only a "special and small category" of cases. *Empire HealthChoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006). To determine whether such jurisdiction is proper, the Supreme Court created a four-part test. To assert federal jurisdiction, the removing party must establish that a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258

(2013). Where all four requirements are satisfied, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313-14).

### III.   ANALYSIS

Four federal district courts–three within the Eleventh Circuit and one in the Second Circuit–have recently addressed whether the incorporation of CMS's 340B drug reimbursement rates into a private contract between a healthcare provider and an MAO satisfies the four-part test for federal question jurisdiction under *Grable. See Shands Teaching Hospital & Clinics, Inc. v. Sunshine State Health Plan, Inc.,* No. 1:24-cv-197-AW-ZCB (N.D. Fla. Jan, 27, 2025) ("Shands I") (unpublished order but produced in the record; D.E. 28 at Exhibit 1); *Shands Jacksonville Med. Ctr., Inc. v. Aetna Health, Inc.,* 768 F. Supp. 3d 1357 (N.D. Fla. 2025) ("Shands II"); *Health Care Auth. for Baptist Health v. UnitedHealthCare of Ala., Inc.,* No. 2:24-cv-774-ECM [WO], 2025 U.S. Dist. LEXIS 129095, 2025 WL 1884796 (M.D. Ala. July 8, 2025); *NYU Langone Hosps. v. UnitedHealthcare Ins. Co.,* 2025 U.S. Dist. LEXIS 10164, 2025 WL 252454 (S.D.N.Y. Jan. 21, 2025). Each of these courts reached the same conclusion, finding that the disputes did not present a substantial question of federal law, and remanded the cases to state court. We find the analysis of our fellow district courts persuasive and adopt the same result here, which is amply warranted given this court's limited subject matter jurisdiction. Accordingly, remand is required under

the first prong of the *Grable* test because Baptist Health's claims do not necessarily raise a federal issue.  But we also find below that two other prongs of the *Grable* analysis also compellingly favor remand.

A.   **<u>Whether the Complaint Necessarily Raises a Federal Claim</u>**

To satisfy this first requirement, the federal statute must be an essential element of the plaintiff's *claim. See Grable,* 545 U.S. at 315 (finding that a federal issue was necessarily raised because the plaintiff's quiet title claim required determining whether the IRS had given proper notice of a tax lien within the meaning of a federal statute prior to seizing the plaintiff's property). This case is different. This dispute centers on the interpretation of a private contract, not on the construction or application of federal law. Specifically, the question this case turns on is whether the language in the parties' Agreement incorporates CMS's one-time lump-sum payment remedy, not whether the Final Remedy Rule is lawful or has been correctly enforced.

The Agreement requires that Preferred Care pay Baptist Health a percentage of the Medicare allowable amount for covered outpatient prescription drugs. [D.E. 18 at 51-53]. Further, Preferred Care also elected to update its "reimbursement methodology, applicable reimbursement components and/or rates used to calculate Hospital's Contract Rate for services provided by Hospital to Medicare Members to be consistent with CMS." *Id*. at 53. Therefore, whether Preferred Care must comply with CMS's one-time lump-sum payment rule depends entirely on the contract's language, the parties' intent, and Florida contract law. Critically, CMS explicitly stated in its Final Remedy Rule that determining a course of action to ensure MAOs

comply with the rule was "out of the scope of th[e] final rule," noting that CMS may not interfere with the terms and conditions of payment that MAOs reach with their contracted providers. 88 Fed. Reg. at 77,184. Because CMS's remedy is only required to apply only to traditional Medicare beneficiaries, any expectation Baptist Health has in receiving a lump-sum payment from Preferred Care must be grounded in the language of the Agreement, not the federal rule itself.

As noted above, three district courts within this Circuit have found that nearly identical matters are properly adjudicated in state court and do not give rise to federal jurisdiction. In *Shands II,* for instance, a 340B hospital that had provided drugs to a private insurer's Medicare Advantage Plan members between 2018 and 2022 filed suit in state court, alleging entitlement to an additional payment based on the higher, pre-2018 reimbursement rates. 768 F. Supp. 3d at 1359-1360. The court concluded that the hospital's claims ultimately depended on the terms of the parties' private contract and that any obligation on the insurer to pay higher rates arose from that contract, not from the 340B final remedy or the Supreme Court's decision in Becerra. *Id*.

The same conclusion was reached in *Health Care Auth. for Baptist Health,* where a 340B hospital filed a breach of contract action in state court against an MAO. 2025 U.S. Dist. LEXIS 129095, at *4-5. There, the hospital similarly argued that CMS's lump-sum remedy must be followed due to the contract's incorporation of CMS's 340B pricing structure. *Id*. at *5-8. As in *Shands II*, the Alabama district court

persuasively showed that the dispute was governed by the parties' contract and state law, not federal law.  The court thus granted the motion to remand.

Likewise, at its core, the dispute here is contractual, and, therefore, does not raise a federal issue. As explained in *Health Care Auth. for Baptist Health,* because federal law precludes CMS from interfering in MAOs' contract negotiations, the 340B remedy has no independent effect on the parties' contractual obligations unless a court finds that it is incorporated into the terms of their private contract. 2025 U.S. Dist. LEXIS 129095, at *9. Accordingly, it is the scope of the Agreement, not federal law, that must be analyzed, as the resolution of this dispute hinges on an interpretation of the contract's terms.

Plaintiffs are thus quite right to assert that there is no need for the court to interpret CMS's Final Remedy Rule, beyond determining whether it is subsumed within the Agreement, in order to evaluate Plaintiffs' claim.  In asserting the contrary, Preferred Care contends that Plaintiffs' claims depend on "disputed issues of a federal nature regarding the Becerra litigation and the 340B Remedy Final Rule." [D.E. 35-1 at 9-10]. The first obvious problem with that characterization is that being of a "federal nature" is not at all what *Grable* requires for this "special" category of cases. But apart from that legal failing, as the court in *Shands II* pointed out, there is no obligation "under *Becerra*" for MAOs to pay the higher rates; the remedy resulting from that decision only binds CMS to traditional Medicare beneficiaries, not MAOs to their contracted providers. 768 F. Supp. 3d at 1359.

And although a court may indeed have to analyze the 340B Final Remedy Rule as part of its determination whether it falls within the scope of the Agreement, this is not enough to confer federal jurisdiction. Take, for instance, the Eleventh Circuit's decision in *Madzimoyo v. Bank of N.Y. Mellon Trust Co., N.A.,* where a plaintiff filed a petition in state court seeking a temporary restraining order to stop foreclosure proceedings on his home, which the defendant bank then removed to federal court. 440 F. App'x 728, 729 (11th Cir. 2011). Because the plaintiff's petition and additional correspondence he sent to the defendants referenced various federal laws and regulations, the magistrate judge denied the plaintiff's motion to remand. *Id.* at 729-30. On appeal, however, the Eleventh Circuit concluded that the district court should not have exercised federal-question jurisdiction under *Grable*, noting that "'[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction,' even where the interpretation of federal law may constitute an element of the state cause of action." *Id.* at 730 (quoting *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 813 (1986)). That magistrate judge certainly agreed with the premise Preferred relies on here, that the arguments between the parties implicated a federal nature given the various regulations in play, but the Court of Appeals reminded us that *Grable* requires a lot more than that. "Although Madzimoyo's petition referenced federal laws in passing, none of his causes of action relied on even the interpretation of federal law." *Id.* at 731.

Along those very same lines, just because Plaintiffs' breach of contract claim may require the court to interpret the 340B Final Remedy Rule to determine whether

it is incorporated into the terms of the Agreement, this does not give rise to federal question jurisdiction under section 1331. It is evident from Plaintiffs' Complaint that it has asserted only state-law causes of action. And most importantly the relief that the Complaint contemplates – breach of contract money damages – is not dependent on a dispositive interpretation of federal law. Because *Grable* requires application of the well-pleaded complaint rule, federal jurisdiction exists only when a federal issue arises on the face of the complaint. *See, e.g., Schleider v. GVDB Ops., Ltd. Liab. Co.,* 121 F.4th 149, 166 (11th Cir. 2024).

This Eleventh Circuit case provides another illustration of that point. In *Schleider* the Eleventh Circuit affirmed an order of remand when a complaint, like ours, asserted only claims strictly based on state law. *Id*. Representatives of an estate sued an assisted living facility owned and operated by the defendants after a resident contracted COVID-19 at the facility and died. *Id*. at 154. The plaintiffs asserted survival and wrongful death claims based on alleged violations of a Florida statute. *Id*. The defendants removed the case to federal court, claiming that the plaintiffs' claims involved an embedded federal question under *Grable*. *Id*. at 155. The court rejected this argument and affirmed the remand of the case, holding that *Grable* did not confer federal jurisdiction because the plaintiff's claims strictly arose under a Florida statute governing assisted living facilities. *Id*. at 166-67. Because no federal claim appeared on the face of the complaint, the well-pleaded complaint rule was not satisfied. *Id*. at 166. *See also Kemp v. IBM,* 109 F.3d 708, 712 (11th Cir. 1997) ("If the plaintiff elects to bring only state law causes of action in state court, no federal

question will appear in the complaint that could satisfy the well-pleaded complaint rule, and the case may not be removed to federal court.").

As in *Schleider*, Preferred Care is seeking to circumvent the limits on our exercise of federal jurisdiction by alleging that this case can be removed even though only a breach of contract rooted in Florida law, along with alternative state-law claims for unjust enrichment and quantum meruit, have been alleged in the operative complaint. And even if federal rules or regulations form the backdrop of these contract claims, at the heart of the case we still are left with only a state law contract dispute. *See, e.g., Ruiz v. Ringling Coll. of Art & Design, Inc.*, 656 F. Supp. 3d 1340, 1350 (M.D. Fla. 2023) (granting motion to remand over defendant's Grable arguments; "Defendant has failed to demonstrate that the meaning of a federal statute is actually in dispute in these counts; rather, it is the *facts* that the parties vehemently contest. . . . State courts are 'generally presumed competent to interpret and apply federal law.' . . . To the extent any interpretation of Title IX or the ADA is required to resolve these counts, the state court is amply capable of doing so.").

Preferred Care is also running afoul of a related basic principle, recently enforced in another Eleventh Circuit decision with analogous facts and legal issues. That principle is that federal jurisdiction under *Grable* cannot be established merely because "a defendant seeks to raise a federal defense." *Holman v. Knollwood Nursing Home, LLC,* No. 21-14494, 2025 U.S. App. LEXIS 520, *7 (11th Cir. Jan. 10, 2025) (citing *Schleider*, 121 F.4th at 166-67). In *Holman*, plaintiffs brought a state-law tort suit alleging negligence and a COVID-19 related wrongful death against a nursing

home and its staff members. *Id*. at *2-3. The defendants, basing their defense on a federal statute governing public health emergencies, removed the case to federal court. *Id*. The court held that the defendants' argument, that federal laws and regulations addressing public health emergencies raised substantial federal questions, was not sufficient to confer §1331 jurisdiction under *Grable*. *Id*. at *7. The court emphasized that, at most, the defendants were attempting to assert a defense based on the federal act, but this approach does not satisfy *Grable*. *Id*.

Similarly, here, although Plaintiffs' Complaint mentions the 340B Final Remedy Rule, it does so only to provide context regarding the CMS actions it alleges prompted Preferred Care's contractual obligations. For their part, however, Plaintiffs do not rely on any federal law to state a cause of action. Rather, it is Defendant that places the application and interpretation of the 340B Final Remedy Rule at the center of its defense. But as the Eleventh Circuit made clear in *Holman*, the mere fact that a defendant relies on federal law as part of their defense is not enough to support removal to federal court. *See also Scarborough v. Carotex Constr., Inc.,* 420 F. App'x 870, 873 (11th Cir. 2011) ("to determine whether the claim arises under federal law, [the Court] examine[s] the well-pleaded allegations of the Complaint and ignore[s] potential defenses . . . .") (quoting *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003)); *Fuentes v. HCA Healthcare Inc.*, No. 23-24369-CIV, 2024 WL 2782883, at *4 (S.D. Fla. Feb. 5, 2024) (Altonaga, J.) (quoting in part *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004)) (granting motion to remand and rejecting defendant's *Grable* arguments; "At bottom, a reference to a 'federal issue' is not 'a

password opening federal courts to any state action embracing a point of federal law.' *Grable*, 545 U.S. at 314. Here, Defendant has not met its burden to show that Plaintiff's claims 'really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law.'").

Under *Grable*, the failure to satisfy this essential first prong of the test is enough to find that no federal jurisdiction can lie. But we will proceed to analyze two other prongs of the test that bolster this conclusion. When all is said and done, however, Defendant has not satisfied its burden of showing that the *Grable* factors together warrant removal. They don't.

### B. *Whether the Remaining* Grable *Factors are Satisfied*

Even if the Court were to accept Defendant's interpretation of the "federal nature" of the dispute, that the application of the *Becerra* decision and CMS's Final Remedy Rule necessarily raise federal issues, federal jurisdiction would still not be proper because the two final prongs of the Grable test are not satisfied.

If the first prong was met, the second would also, because the issues Defendant characterizes as federal are disputed by the parties. For example, Plaintiffs and Defendant offer competing interpretations of the 340B Final Remedy Rule. Plaintiffs contend that the rule is an update to CMS's payment methodology, and it cites language from the rule in support. [D.E. 17 at 10]. Preferred Care, by contrast, considers the 340B Final Remedy Rule a unique and equitable remedy, not an update to any payment methodology. [D.E. 35-1 at 12]. Nevertheless, the existence of an

actual dispute of a federal issue alone is insufficient to invoke "arising under" jurisdiction under *Grable*.

If this breach of contract case did necessarily raise a federal issue that was actually disputed, federal jurisdiction would still fail because the issue is not substantial. The substantiality prong looks to the "importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. "The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction[;] the implicated federal issue must be *substantial.*"). *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1291–92 (11th Cir. 2004) (emphasis in original).

Preferred Care has failed to show that the purported federal issue in this dispute rises to the level of substantiality that *Grable* requires.  To illustrate, in *NYU Langone* the Southern District of New York was presented with a 340B hospital that sued two MAOs, alleging that the defendants were liable for breach of contract because the parties' private agreements incorporated the CMS pricing system and reimbursement methodology later condemned in *Becerra*. 2025 U.S. Dist. LEXIS 10164, at *5-6. The plaintiff hospital argued that the lump-sum remedy set forth in the Final Remedy Rule "should be applied to these private contracts as a matter of contract interpretation." *Id*. The court found that "the statute and rules governing reimbursement of 340B hospitals are tangential to the core dispute and hence insubstantial," and ultimately held that the hospital's claims would have no binding impact on future interpretation of federal law. *Id*.

The same analysis applies here. The 340B Final Remedy Rule is not the central issue in this matter; rather it is the interpretation of the contract that will resolve the key questions this case presents. This dispute can be resolved without interpreting federal law in a way that affects the federal system as a whole, making any possible federal issue insubstantial under *Grable*.

Yet Defendant insists that the issues presented are substantial because they could have wide-ranging implications across the Medicare Advantage program. [D.E. 35-1 at 21]. But there is no indication that this private contract dispute would have such a sweeping effect on the federally created scheme. As the court observed in *Shands I*, MAOs are private insurers, not government agents, whose disputes are confined to their contractual obligations. No. 1:24-cv-97-AW-ZCB at 6-7. Because these matters are narrowly decided based on the terms of the specific agreements between private parties, it is a stretch to claim that they could have a substantial impact on the Medicare program as a whole. *See id.; see also Kanfer v. WellCare of Fla., Inc.,* No. 09-81587-CIV, 2010 U.S. Dist. LEXIS 146022 (S.D. Fla. Mar. 6, 2010) (finding no substantial issue of federal law where the dispute turned solely on contract interpretation and no federal agency action was being challenged).

Much like *Shands I* and *Kanfer*, Plaintiffs are not questioning the validity of CMS's Final Remedy Rule or the *Becerra* decision. They are instead advocating for a certain interpretation of a private contract that pertains solely to the present parties. That is also not fundamentally different from what the plaintiffs pursued in *Empire HealthChoice Assurance, Inc. v. McVeigh,* where a private health insurance carrier

filed suit in federal court seeking reimbursement of the full amount it had paid for a beneficiary's medical care after the administratrix of the beneficiary recovered damages in a state-court tort action against a third party alleged to have caused the accident. 547 U.S. at 682-683. Although the plaintiff insurance company argued that federal law was a necessary element of its claim for relief, as it operated under a federal act authorizing private carriers to provide health-care plans to federal employees, the Supreme Court declined to find federal jurisdiction under *Grable*. *Id.* at 699. The Court found that "the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court . . . and the bottom-line practical issue is the share of that settlement properly payable to Empire." *Id.* at 700.

Analogously, here, although Preferred Care operates under CMS, the principal matter here is whether a private contract requires Defendant to make a lump-sum payment to Plaintiffs. Like the plaintiff in *Empire*, Baptist Health is not claiming that it is entitled to the lump-sum payment due to any action by CMS or any federal court ruling. Instead, it is solely contending that an independently negotiated Agreement, which concerns only the present parties, triggered Defendant's contractual obligations. Therefore, their claims are "fact-bound and situation-specific" and unlikely to be significant to the broader federal system. *Id.* at 701. *See, e.g., Gunn v. Minton*, 568 U.S. at 258–59 ("Although [state law malpractice cases] may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to

establish jurisdiction."); *Fuentes v. HCA,* 2024 WL 2782883, at *3 (Judge Altonaga granted motion to remand in part because "[w]hether Defendant breached its duties presents a question of fact, . . . and is unlikely to be important to the federal system as a whole[.] The existence of Defendant's duties under federal law may raise a question of law, . . . but this is not enough to constitute a substantial issue on its own[.]") (citations omitted); *Meyer v. Health Mgmt. Associates, Inc.*, 841 F. Supp. 2d 1262, 1268–69 (S.D. Fla. 2012) (Scola, J.) (granting motion to remand state whistleblower claim that was based on alleged violations of federal Medicare statutes and regulations; "HMA contends that substantiality is shown primarily because the Medicare laws are complicated and resolution of this case will require the Court to address issues of first impression in this Circuit. But Meyer's claim does not present any case-dispositive "nearly 'pure issue of law' " for resolution; rather, the substantiality of the dispute appears to center upon, and be bound up in, context-specific factual determinations going to HMA's knowledge, the sufficiency and timing of any Medicare disclosures, and whether its actions constituted fraud or not.").

Turning to the next prong, the federal government does not have a strong interest in litigating this matter in a federal forum, further weighing against finding a substantial federal issue under *Grable. See, e.g., AST & Sci. LLC v. Delclaux Partners SA,* No. 23-11985, 2025 U.S. App. LEXIS 16935, *8 (11th Cir. July 9, 2025). In *AST*, a recent addition to the slew of *Grable* cases that have rejected efforts to expand federal jurisdiction beyond the four corners of a complaint, the Eleventh Circuit rejected federal jurisdiction in a case where the plaintiff, a satellite technology

and communications company, brought a state-law breach-of-contract claim against a defendant it hired to introduce it to registered broker-dealers. *Id*. at *2. The parties' agreement required the defendant to abstain from any action that would require it to be registered as an investment advisor or broker-dealer, and the plaintiff alleged that the defendant operated as an unregistered broker-dealer. *Id*. at *2-4. Although the district court found, as Defendant advocates here, that the resolution of the breach-of-contract claim required the analysis of a federal issue, the Eleventh Circuit found that the "substantiality" factor under *Grable* was not satisfied. Id. at *5-7. The court also reasoned that the federal government was not a party in the case, that there was no governmental action that led to the lawsuit, and that the federal government would not have a strong interest in a purely private contractual dispute. *Id*. at *10-11. *Grable* thus could not properly apply.

The same is true here. The federal government, specifically CMS, is not a defendant, and Plaintiffs have not challenged any agency action. Instead, Plaintiffs only allege that Defendant has failed to comply with contractual obligations, not federal law. As in *AST*, if the Agreement did not exist, neither would this case. While the court may have to address the 340B Final Remedy Rule to determine whether it falls within the scope of the Agreement, the claim remains grounded in Florida contract law, and its outcome will affect only the parties to this action.

Moreover, even if the federal issue satisfies the substantiality prong of *Grable*, remand is still required to protect the congressionally approved balance of federal and state judicial responsibilities. *See Grable,* 545 U.S. at 314. This case implicates

the very same concerns highlighted by the Eleventh Circuit in *Adventure Outdoors, Inc. v. Bloomberg*, which warned that authorizing federal jurisdiction in that circumstance would invite federal jurisdiction in any case where a defamation defendant accused a plaintiff of violating federal law. 552 F.3d 1290, 1302 (11th Cir. 2008). Likewise, here, if the Court were to exercise § 1331 jurisdiction, it would set a precedent for extending federal jurisdiction to breach of contract disputes merely because the contract incorporates terms or rates determined by federal agencies or statutes. The Court is mindful of the danger in allowing state-law claims to be recast as federal questions simply by referencing federal law, which would undermine the division of judicial responsibilities Congress intended to preserve under § 1331. *See, e.g., Meyer*, 841 F. Supp. 2d at 1272 (Judge Scola granted motion to remand in part because "[i]f this case were allowed into federal court, we might as well set out the welcome mat for any and every state law employment action premised upon a violation of some federal statute, rule, or regulation. *See, e.g., Adventure Outdoors*, 552 F.3d at 1302 ('[B]y authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law.')[.] This Court declines to put out the welcome mat.") (other citations & quotations omitted).

## IV.    CONCLUSION

Defendant has failed to satisfy multiple elements of the strict standards required by *Grable* that are necessary for this case to fall within the "slim category"

of cases that qualify for federal jurisdiction under that rule. *Empire,* 547 U.S. at 701. Plaintiffs' motion to remand is thus **GRANTED**.

As to execution of this Order, it is well established that I can dispose of the motion by entry of this Order, so long as all parties understand that the Order does not become final until a period of time is afforded in the event any party seeks to appeal the Order to the District Judge under Rule 4(a). Further, in an abundance of caution the Court expressly grants any objecting party leave to seek de novo review of the Order despite the normal standards that govern Rule 4(a) appeals.  If no appeal is filed, the Clerk shall then execute the Order and remand the case.

Accordingly, the Court finds good cause to stay execution of this Order for seven days to allow any party to file an appeal with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered herein and shall bar the parties from challenging on appeal any unobjected-to factual or legal conclusions included in the Order (which appeal is of course moot in any event given the statute's restriction on filing appeals from orders remanding based on lack of jurisdiction).

If no appeal is filed, the Court shall lift the stay and will then Direct the Clerk of the Court to remand the action to the Eleventh Judicial Circuit in Miami-Dade County, Florida.

**DONE and ORDERED** in Chambers at Miami, Florida, this 28th day of July, 2025.

/s/ *Edwin G. Torres*
United States Magistrate Judge